# EXHIBIT
# A

# AGREEMENT FOR THE SALE OF COMMERCIAL REAL ESTATE    ASC

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

| PARTIES | |
|---|---|
| **BUYER(S):** Ryan D. Covalt, Whitney L. Covalt | **SELLER(S):** Daniel J. Baer |
| 7888 Anthony Highway, Waynesboro, PA 17268 | ~~162 South Carlisle Street, Greencastle, PA 17225~~ 14754 Ridge Rd, Waynesboro PA 17268 |

## PROPERTY

**PROPERTY ADDRESS** 8782 Wayne Highway, Waynesboro, PA including business property building, Farmhouse, Barn and outbuildings with 80 acres

in the municipality of **Quincy Township**                                    ZIP **17268**
County of **Franklin** , in the Commonwealth of Pennsylvania.
Identification (e.g., Parcel #; Lot, Block, Deed Book, Page, Recording Date): **Parcel #: 19-0L12-048-000000; Deed Book: 1517, Deed Page: 0557; Recording Date of: 05/02/2000**
Tax ID #(s): **19-L12-48**

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Buyer is not represented by a broker)**

| | |
|---|---|
| Broker (Company) **RE/MAX Associates Realty Group** | Licensee(s) (Name) **Darwyn W. Benedict, BROKER, REALTOR®, GRI, ABR** |
| Company Address **410 North Grant Street, Waynesboro, PA 17268** | Direct Phone(s) **(717)762-8100x102** |
| | Cell Phone(s)  **(717)977-8100** |
| Company Phone **(717)762-8100** | Fax  **(717)762-1333** |
| Company Fax  **(717)762-1333** | Email **darwynbenedict@remax.net** |
| Broker is (check only one): | Licensee(s) is (check only one): |
| ☐ Buyer Agent (Broker represents Buyer only) | ☐ Buyer Agent (all company licensees represent Buyer) |
| ☒ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer) |
| | ☒ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Seller is not represented by a broker)**

| | |
|---|---|
| Broker (Company) **RE/MAX Associates Realty Group** | Licensee(s) (Name) **Joshua R. Mummert, Associate Broker, REALTOR®** |
| Company Address **410 North Grant Street, Waynesboro, PA 17268** | Direct Phone(s) **(717)762-8100x111** |
| | Cell Phone(s)  **(717)729-3151** |
| Company Phone **(717)762-8100** | Fax  **(717)762-1333** |
| Company Fax  **(717)762-1333** | Email **Joshmummert@remax.net** |
| Broker is (check only one): | Licensee(s) is (check only one): |
| ☐ Seller Agent (Broker represents Seller only) | ☐ Seller Agent (all company licensees represent Seller) |
| ☒ Dual Agent (See Dual and/or Designated Agent box below) | ☒ Seller Agent with Designated Agency (only Licensee(s) named above represent Seller) |
| | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

**Buyer Initials:** WC PC                    **ASC Page 1 of 9**                    **Seller Initials:**

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2018
rev 1/18, rel 4/18

RE/MAX Associates Realty Group, 410 North Grant Street Waynesboro PA 17268                    Phone (717) 762-8100          Fax (717) 762-1333          Wayne Hwy, 8782
Darwyn Benedict
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

1. 1. By this Agreement, dated _____ July 6, 2019 _____ , Seller hereby agrees to sell and convey to
2. Buyer, who agrees to purchase, the identified Property.
3. 2. **PURCHASE PRICE AND DEPOSITS (3-15)**
4. (A) Purchase Price $ 800,000.00
5. ( **Eight Hundred Thousand** _____
6. _____ U.S. Dollars), to be paid by Buyer as follows:
7. 1. Initial Deposit, within _____ days (5 if not specified) of Execution Date,
8. if not included with this Agreement; $ _____ 5,000.00
9. 2. Additional Deposit within _____ days of the Execution Date; $ _____
10. 3. _____ $ _____
11. Remaining balance will be paid at settlement.
12. (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer
13. within 30 DAYS of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by per-
14. sonal check.
15. (C) Deposits, regardless of the form of payment and the person designated as payee, will be paid in U.S. Dollars to Broker for Seller
16. (unless otherwise stated here: _____ ),
17. who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or ter-
18. mination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of
19. the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this
20. Agreement.
21. 3. **SETTLEMENT AND POSSESSION (6-13)**
22. (A) Settlement Date is 09/30/2019 early afternoon _____, or before if Buyer and Seller agree.
23. (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless
24. Buyer and Seller agree otherwise.
25. (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable:
26. current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer
27. fees, together with any other lienable municipal service fees. All charges will be pro-rated for the period(s) covered. Seller will
28. pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:
29. _____
30. (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
31. 1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
32. 2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December
33. 31. School tax bills for all other school districts are for the period from July 1 to June 30.
34. (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
35. _____
36. (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
37. _____
38. (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures
39. broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property
40. is subject to a lease.
41. (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and
42. assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller
43. will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will
44. acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
45. ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.
46. 4. **DATES/TIME IS OF THE ESSENCE (3-15)**
47. (A) Written acceptance of all parties will be on or before: July 26, 2019 including Trustee
48. (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the
49. essence and are binding.
50. (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by sign-
51. ing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding
52. the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be ini-
53. tialed and dated.
54. (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agree-
55. ment of the parties.
56. (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms
57. and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable
58. to all parties, except where restricted by law.
59. 5. **FIXTURES AND PERSONAL PROPERTY (4-14)**
60. (A) INCLUDED in this sale are all existing items permanently installed in the Property, free of liens, including plumbing, heating, HVAC
61. equipment; lighting fixtures (including chandeliers and ceiling fans); and water treatment systems, unless otherwise stated below; any
62. remaining heating, cooking and other fuels stored on the Property at the time of settlement. Also included: _____
63. _____
64. _____
65. _____
66. Buyer Initials: _____  ASC Page 2 of 9  Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    Wayne Hwy. 8765

67  (B) The following items are LEASED (not owned by Seller): _____
68  _____
69  (C) EXCLUDED fixtures and items: _____
70  _____

71 **6.  ZONING (4-14)**
72  Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdi-
73  vidable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if
74  voided, any deposit tendered by the Buyer will be returned to the Buyer without any requirement for court action.
75  Zoning Classification, as set forth in the local zoning ordinance: **Agricultural Commercial** _____

76 **7.  FINANCING CONTINGENCY (4-14)**
77  ☐  **WAIVED.** This sale is NOT contingent on financing, although Buyer may obtain financing and/or the parties may include an
78  appraisal contingency.
79  ☒  **ELECTED.**
80  (A) This sale is contingent upon Buyer obtaining financing according to the following terms:

| First Loan on the Property | Second Loan on the Property |
|---|---|
| Loan Amount $ **640,000.00** | Loan Amount $ _____ |
| Minimum Term ____**25**____ years | Minimum Term _____ years |
| Type of Loan **Conventional** | Type of Loan _____ |
| Interest rate ____**4.000**____ %; however, Buyer agrees to accept the interest rate as may be committed by the lender, not to exceed a maximum interest rate of ____**5.000**____ % | Interest rate _____ %; however, Buyer agrees to accept the interest rate as may be committed by the lender, not to exceed a maximum interest rate of _____ %. |

88  (B) **Financing Commitment Date September 18, 2019**
89  (C) Within _____ days (10 if not specified) from the Execution Date of this Agreement, Buyer will make a completed, written appli-
90  cation for the financing terms stated above to a responsible lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise
91  Broker for Seller, is authorized to communicate with the lender(s) to assist in the financing process.
92  (D) Should Buyer furnish false or incomplete information to Seller, Broker(s), or the lender(s) concerning Buyer's legal or
93  financial status, or fail to cooperate in good faith in processing the financing application, which results in the lender(s)
94  refusing to approve a financing commitment, Buyer will be in default of this Agreement.
95  (E) Upon receipt of a financing commitment, Buyer will promptly deliver a copy of the commitment to Seller. Unless otherwise
96  agreed to in writing by Buyer and Seller, if a written commitment is not received by Seller by the above date, this Agreement may
97  be terminated by Buyer or Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 24. Buyer will
98  be responsible for any premiums for mechanics' lien insurance and/or title search, or fee for cancellation of same, if any, AND/OR
99  any premiums for flood insurance and/or fire insurance with extended coverage, insurance binder charges or cancellation fee, if
100 any; AND/OR any appraisal fees and charges paid in advance to lender.

101 **8.  CHANGE IN BUYER'S FINANCIAL STATUS (4-14)**
102  In the event of a change in Buyer's financial status affecting Buyer's ability to purchase, Buyer shall, within _____ days (5 if not spec-
103  ified) of said change notify Seller and lender(s) to whom the Buyer submitted loan application, if any, in writing. A change in financial
104  status includes, but is not limited to, loss or a change in income; Buyer's having incurred a new financial obligation, entry of a judg-
105  ment against Buyer. Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's
106  ability to purchase.

107 **9.  SELLER REPRESENTATIONS (6-13)**
108  (A) **Status of Water**
109  Seller represents that the Property is served by:
110  ☐ Public Water ☐ Community Water ☒ On-site Water ☐ None ☐ _____
111  (B) **Status of Sewer**
112  1.  Seller represents that the Property is served by:
113  ☐ Public Sewer ☐ Community Sewage Disposal System ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
114  ☒ Individual On-lot Sewage Disposal System (see Sewage Notice 1) ☐ Holding Tank (see Sewage Notice 3)
115  ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
116  ☐ None (see Sewage Notice 1) ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
117
118  2.  **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
119  **Notice 1:** There is no currently existing community sewage system available for the subject property. Section 7 of the
120  Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter,
121  repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a
122  permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with
123  administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The
124  local agency charged with administering the Act will be the municipality where the Property is located or that municipality
125  working cooperatively with others.

126  Buyer Initials: _**WC, PDE**_          **ASC Page 3 of 9**          Seller Initials: _____

127        **Notice 2:** This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions
128        of Section 7 of the Pennsylvania Sewage Facilities Act. (Section 7 provides that a permit may not be required before installing,
129        constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre
130        parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted
131        and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction
132        may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.
133        **Notice 3:** This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water
134        carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site.
135        Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank
136        from the date of its installation or December 14, 1995, whichever is later.
137        **Notice 4:** An individual sewage system has been installed at an isolation distance from a well that is less than the dis-
138        tance specified by regulation. The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances
139        provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water
140        supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the hori-
141        zontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the
142        absorption area shall be 100 feet.
143        **Notice 5:** This lot is within an area in which permit limitations are in effect and is subject to these limitations. Sewage facilities
144        are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality com-
145        pletes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.
146  (C)  Seller represents and warrants that Seller has no knowledge except as noted in this Agreement that: (1) The premises have been
147        contaminated by any substance in any manner which requires remediation, (2) The Property contains wetlands, flood plains, or
148        any other environmentally sensitive areas, development of which is limited or precluded by law, (3) The Property contains
149        asbestos, polychlorinated biphenyls, lead-based paint or any other substance, the removal or disposal of which is subject to any law
150        or regulation; and (4) Any law has been violated in the handling or disposing of any material or waste or the discharge of any mate-
151        rial into the soil, air, surface water, or ground water.
152  (D)  Seller agrees to indemnify and to hold Broker harmless from and against all claims, demands, or liabilities, including attorneys fees
153        and court costs, which arise from or are related to the environmental condition or suitability of the Property prior to, during, or
154        after Seller's occupation of the Property including without limitation any condition listed in Paragraph 9 (C).
155  (E)  Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here. _____
156      _____
157      _____
158  (F)  Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association
159        assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority
160        has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safe-
161        ty or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such
162        ordinances that remain uncorrected, unless otherwise specified here: _____
163      _____
164  (G)  Seller knows of no other potential notices (including violations) and/or assessments except as follows _____
165      _____
166  (H)  Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.
167 **10.  WAIVER OF CONTINGENCIES (9-05)**
168      If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental
169      conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's
170      failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and
171      Buyer accepts the Property and agrees to the RELEASE in Paragraph 26 of this Agreement.
172 **11.  BUYER'S DUE DILIGENCE (3-15)**
173    ☐  **WAIVED.** This sale is NOT contingent upon the results of any inspection(s), although Buyer may inspect the Property (including
174        fixtures and any personal property specifically listed herein). Buyer agrees to purchase the Property IN ITS PRESENT CONDI-
175        TION, regardless of the results of any inspection(s) or findings that Buyer may learn of after the Execution Date of this Agreement.
176    ☒  **ELECTED.** This sale IS contingent upon the results of inspection(s). It is Buyer's responsibility to determine that the condi-
177        tion and permitted use of the property is satisfactory. Buyer may, within _____ 35 _____ days (30 if not specified) from the Execution
178        Date of this Agreement, conduct due diligence (Due Diligence Period), which includes, but is not limited to, verifying that the
179        condition, permitted use, insurability, environmental conditions, boundaries, certifications, deed restrictions, zoning classifica-
180        tions and any other features of the Property are satisfactory. Buyer may request that the property be inspected, at Buyer's
181        expense, by qualified professionals to determine the physical, structural, mechanical and environmental condition of the land,
182        improvements or their components, or for the suitability of the property for Buyer's needs. If, as the result of Buyer's due dili-
183        gence, Buyer determines that the Property is not suitable for Buyer's needs, Buyer may, prior to the expiration of the Due
184        Diligence Period, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to
185        the terms of Paragraph 24 of this Agreement. In the event that Buyer has not provided Seller with written notice of Buyer's
186        intent to terminate this Agreement prior to the end of the Due Diligence Period, this Agreement shall remain in full force and
187        effect in accordance with the terms and conditions as more fully set forth in this Agreement.
188  (A)  Buyer has been given the opportunity to inspect the Property (including fixtures and any personal property specifically listed
189        herein) and, subject to the Due Diligence contingency if elected, agrees to purchase the Property IN ITS PRESENT CON-
190        DITION unless the parties agree otherwise in writing. Buyer's decision to purchase the Property is a result of Buyer's own
191        inspections and determinations and not because of or in reliance on any representations made by Seller or any other party.

192  **Buyer Initials:** _RDC, WC_          ASC Page 4 of 9          **Seller Initials:** _____

193 Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or
194 determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the
195 permitted uses, nor of conditions existing in the locale where the Property is situated, nor have they made a mechanical inspection
196 of any of the systems contained therein.

197 (B) Any repairs required by this Agreement will be completed in a workmanlike manner.

198 (C) Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums or require insurance
199 for formerly exempt properties. Buyer should consult with one or more insurance agents regarding the need for flood insurance
200 and possible premium increases.

## 201 12. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (4-14)

202 (A) In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a
203 property at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed
204 value for the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the
205 assessed value of the property and result in a change in property tax.

206 (B) With the exception of county-wide reassessments, assessment appeal notices, notices of change in millage rates or increases in
207 rates, in the event any other notices, including violations, and/or assessments are received after Seller has signed this Agreement
208 and before settlement, Seller will within _____ days (10 if not specified) of receiving the notices and/or assessments provide a
209 copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:

210 1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
211 notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 26 of this Agreement, OR

212 2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails
213 within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within _____ days
214 (10 if not specified) that Buyer will:

215 a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
216 Paragraph 26 of this Agreement, OR

217 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
218 Paragraph 24 of this Agreement.

219 If Buyer fails to respond within the time stated in Paragraph 12(B) (2) or fails to terminate this Agreement by written notice to
220 Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 26 of this Agreement.

221 (C) If required by law, within 30 DAYS from the Execution Date of this Agreement, but in no case later than 15 DAYS prior to
222 Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice
223 of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the
224 Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.

225 (D) Seller has no knowledge of any current or pending condemnation or eminent domain proceedings that would affect the Property.
226 If any portion of the Property should be subject to condemnation or eminent domain proceedings after the signing of this
227 Agreement, Seller shall immediately advise Buyer, in writing, of such proceedings. Buyer will have the option to terminate this
228 Agreement by written notice to Seller within _____ days (15 days if not specified) after Buyer learns of the filing of such
229 proceedings, with all deposit monies returned to Buyer according to the terms of Paragraph 24 of this Agreement. Buyer's failure
230 to provide notice of termination within the time stated will constitute a WAIVER of this contingency and all other terms
231 of this Agreement remain in full force and effect.

## 232 13. TAX DEFERRED EXCHANGE (4-14)

233 (A) If Seller notifies Buyer that it wishes to enter into a tax deferred exchange for the Property pursuant to the Internal Revenue Code,
234 Buyer agrees to cooperate with Seller in connection with such exchange, including the execution of such documents as may be
235 reasonably necessary to conduct the exchange, provided that there shall be no delay in the agreed-to settlement date, and that any
236 additional costs associated with the exchange are paid solely by Seller. Buyer is aware that Seller anticipates assigning Seller's
237 interest in this Agreement to a third party under an Exchange Agreement and consents to such assignment. Buyer shall not be
238 required to execute any note, contract, deed or other document providing any liability which would survive the exchange, nor shall
239 Buyer be obligated to take title to any property other than the Property described in this Agreement. Seller shall indemnify and
240 hold harmless Buyer against any liability which arises or is claimed to have arisen from any aspect of the exchange transaction.

241 (B) If Buyer notifies Seller that it wishes to enter into a tax deferred exchange for the Property pursuant to the Internal Revenue Code,
242 Seller agrees to cooperate with Buyer in connection with such exchange, including the execution of such documents as may be
243 reasonably necessary to conduct the exchange, provided that there shall be no delay in the agreed-to settlement date, and that any
244 additional costs associated with the exchange are paid solely by Buyer. Seller is aware that Buyer has assigned Buyer's interest
245 in this Agreement to a third party under an Exchange Agreement and consents to such assignment. Seller shall not be required to
246 execute any note, contract, deed or other document providing any liability which would survive the exchange. Buyer shall indem-
247 nify and hold harmless Seller against any liability which arises or is claimed to have arisen from any aspect of the exchange trans-
248 action.

## 249 14. COMMERCIAL CONDOMINIUM (10-01)

250 ☒ NOT APPLICABLE
251 ☐ APPLICABLE. Buyer acknowledges that the condominium unit to be transferred by this Agreement is intended for nonresiden-
252 tial use, and that Buyer may agree to modify or waive the applicability of certain provisions of the Uniform Condominium Act of
253 Pennsylvania (68 Pa C S §3101 et seq.).

## 254 15. TITLES, SURVEYS AND COSTS (4-14)

255 (A) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the reg-
256 ular rates, free and clear of all liens, encumbrances, and easements, excepting however the following existing deed restrictions,

257 Buyer Initials: _WC, PDC_     ASC Page 5 of 9     Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     Wayne Hwy, 8782

| 258 | historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads, easements visible upon the |
| 259 | ground; easements of record; and privileges or rights of public service companies, if any. |

(B) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation, (3) Appraisal fees and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.

(C) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.

(D) In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property as set forth in this Agreement on or before the Settlement Date, or any extension thereof, Seller shall, within _____ days (5 if not specified) notify Buyer, in writing. A change in financial status includes, but is not limited to, Seller filing bankruptcy; filing of a foreclosure law suit against the Property; entry of a monetary judgment against Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all liens and encumbrances against the Property. In the event of the death of Seller, the representative of the estate, or a surviving Seller shall immediately notify Buyer.

(E) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as specified in Paragraph 15(A), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 24 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in Paragraph 15 (B) items (1), (2), (3) and in Paragraph 15 (C).

(F) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation about the status of those rights unless indicated elsewhere in this Agreement.

☐ Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached and made part of this Agreement.

(G) **COAL NOTICE (Where Applicable)**
THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984,) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

(H) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here: _____

(I) 1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____

☐ Private Transfer Fee Addendum (PAR Form PTF) is attached and made part of this Agreement.

2. Notice Regarding Private Transfer Fees: In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obligation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.

**16. MAINTENANCE AND RISK OF LOSS (10-06)**

(A) Seller will maintain the Property, grounds, fixtures and personal property specifically listed in this Agreement in its present condition, normal wear and tear excepted.

(B) Seller will promptly notify the Buyer if, at any time prior to the time of settlement, all or any portion of the Property is destroyed, or damaged as a result of any cause whatsoever.

(C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not replaced, Buyer will:
1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 24 of this Agreement.

**17. RECORDING (9-05)**
This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default under this Agreement.

**18. ASSIGNMENT (1-10)**
This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

**19. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**

(A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Commonwealth of Pennsylvania.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Wagner Hwy, 6782

324     (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either
325       party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.
326       Seller understands that any documentation provided under this provision may be disclosed to the Internal Revenue Service by
327       Buyer, and that any false statements contained therein could result in punishment by fine, imprisonment, or both.

328 **20. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (6-13)**
329     The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa C.S. § 9791 et seq.) providing
330     for community notification of the presence of certain convicted sex offenders. Buyers are encouraged to contact the municipal
331     police department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular prop-
332     erty, or to check the information on the Pennsylvania State Police Website at www.pameganslaw.state.pa.us.

333 **21. CERTIFICATION OF NON-FOREIGN INTEREST (10-01)**
334     ☐ Seller IS a foreign person, foreign corporation, foreign partnership, foreign trust, or foreign estate subject to Section 1445 of the
335       Internal Revenue Code, which provides that a transferee (Buyer) of a U.S. real property interest must withhold tax if the transferor
336       (Seller) is a foreign person.
337     ☒ Seller is NOT a foreign person, foreign corporation, foreign partnership, foreign trust, or a foreign estate as defined by the Internal
338       Revenue Code, or is otherwise not subject to the tax withholding requirements of Section 1445 of the Internal Revenue Code. To
339       inform Buyer that the withholding of tax is not required upon the sale/disposition of the Property by Seller, Seller hereby agrees
340       to furnish Buyer, at or before closing, with the following:
341         ☒ An affidavit stating, under penalty of perjury, the Seller's U.S. taxpayer identification number and that the Seller is not a for-
342           eign person.
343         ☐ A "qualifying statement," as defined by statute, that tax withholding is not required by Buyer.
344         ☐ Other._____

345 **22. REPRESENTATIONS (1-10)**
346     (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their
347       licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this
348       Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations,
349       covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This
350       Agreement will not be altered, amended, changed or modified except in writing executed by the parties.
351     (B) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

352 **23. BROKER INDEMNIFICATION (6-13)**
353     (A) Buyer and Seller represent that the only Brokers involved in this transaction are:   **RE/MAX Associates Realty Group**
354     _____
355     and that the transaction has not been brought about through the efforts of anyone other than said Brokers. It is agreed that if any
356     claims for brokerage commissions or fees are ever made against Buyer or Seller in connection with this transaction, each party
357     shall pay its own legal fees and costs in connection with such claims. It is further agreed that Buyer and Seller agree to indemnify
358     and hold harmless each other and the above-listed Brokers from and against the non-performance of this Agreement by either
359     party, and from any claim of loss or claim for brokerage commissions, including all legal fees and costs, that may be made by any
360     person or entity. This paragraphs shall survive settlement.
361     (B) Seller and Buyer acknowledge that any Broker identified in this Agreement (1) is a licensed real estate broker; (2) is not an
362       expert in construction, engineering, code or regulatory compliance or environmental matters and was not engaged to provide
363       advice or guidance in such matters, unless otherwise stated in writing; and (3) Has not made and will not make any representa-
364       tions or warranties nor conduct investigations of the environmental condition or suitability of the Property or any adjacent prop-
365       erty, including but not limited to those conditions listed in Paragraph 9(C).

366 **24. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-10)**
367     (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
368       deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 24(B), and this Agreement will be VOID.
369       Termination of this Agreement may occur for other reasons giving rise to return by Buyer and/or Seller for the deposit monies.
370     (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
371       determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
372       1.  If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
373           agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
374       2.  If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
375           Broker how to distribute some or all of the deposit monies.
376       3.  According to the terms of a final order of court.
377       4.  According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
378           deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 24 (C))
379     (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved ____100____ days (180 if not
380       specified) days after the Settlement Date stated in Paragraph 3(A) (or any written extensions thereof) or following date of termina-
381       tion of the Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's
382       written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is
383       the subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt
384       of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement
385       between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation for any portion of the
386       deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of
387       deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties main-
388       tain their legal rights to pursue litigation even after a distribution is made.

389 Buyer Initials: _WG_RDC_          ASC Page 7 of 9          Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     Wayne Hwy, 8782

(D) Buyer and Seller agree that Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 24 or Pennsylvania law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation

(E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
    1.  Fail to make any additional payments as specified in Paragraph 2, OR
    2.  Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, OR
    3.  Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

(F) Unless otherwise checked in Paragraph 24(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:
    1.  On account of purchase price, OR
    2.  As monies to be applied to Seller's damages, OR
    3.  As liquidated damages for such default.

(G) ☒ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.**

(H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 24 (F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.

(I) Brokers and licensees are not responsible for unpaid deposits

**25. ARBITRATION OF DISPUTES (1-18)**
Buyer and Seller agree to arbitrate any dispute between them that cannot be amicably resolved. After written demand for arbitration by either Buyer or Seller, each party will select a competent and disinterested arbitrator. The two so selected will select a third. If selection of the third arbitrator cannot be agreed upon within 30 days, either party may request that selection be made by a judge of a court of record in the county in which arbitration is pending. Each party will pay its chosen arbitrator, and bear equally expenses for the third and all other expenses of arbitration. Arbitration will be conducted in accordance with the provisions of Pennsylvania Common Law Arbitration 42 Pa. C.S.A. §7341 et seq. This agreement to arbitrate disputes arising from this Agreement will survive settlement.

**26. RELEASE (9-05)**
Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

**27. REAL ESTATE RECOVERY FUND (9-05)**
A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

**28. COMMUNICATIONS WITH BUYER AND/OR SELLER (6-13)**
Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any, except where required by law. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

**29. NOTICE BEFORE SIGNING (4-14)**
Unless otherwise stated in writing, Buyer and Seller acknowledge that Brokers are not experts in legal or tax matters and that Brokers have not made, nor will they make, any representations or warranties nor conduct research of the legal or tax ramifications of this Agreement. Buyer and Seller acknowledge that Brokers have advised them to consult and retain experts concerning the legal and tax effects of this Agreement and the completion of the sale, as well as the condition and/or legality of the Property, including, but not limited to, the Property's improvements, equipment, soil, tenancies, title and environmental aspects. Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties. **WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Return of this Agreement, and any addenda and amendments ,including return by electronic transmission, bearing the signatures of all parties, constitutes acceptance by the parties.

**30. SPECIAL CLAUSES (4-14)**
(A) The following are part of this Agreement if checked:
    ☒ Appraisal Contingency Addendum to Agreement of Sale (PAR Form ACA)
    ☐ Short Sale Addendum to Agreement of Sale (PAR Form SHS)
    ☐ Zoning Change Addendum to Agreement of Sale (PAR Form ZCA)
    ☐
    ☐
    ☐

Buyer Initials: _PD, WC_      ASC Page 8 of 9      Seller Initials: ___

**(B) Additional Terms:**

1. Buyer to pay to have property surveyed for Buyer's use. Seller grants Buyer, Surveyor and Subsidiaries access onto the property as needed before settlement.

2. Seller to escrow funds from closing for removal and clear environment report for any needed governmental body for the underground tanks and pumps. Buyer understands tanks are not operational currently unless Seller can provide documentation otherwise. Escrowed funds shall be adequate to cover estimates to 20% over highest quote to cover unknowns. Seller or Seller's trustee to receive any unused funds upon completion.

3. Buyers are a financially strong purchaser and will provide Seller financial standing documentation from F&M Trust Bank within 10 days of executed contract.

4. This contract is contingent upon Trustee written approval, all contingency dates start once notice is given to Buyer.

5. Property is being sold with no restrictions on title except Township, County and State regulations.

_WC, PDC_ Buyer has received the Consumer Notice, where applicable, as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

_WC, PDC_ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

_WC, PDC_ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing this Agreement.

BUYER _Ryan D. Covalt_     DATE _7/7/19_
     Ryan D. Covalt
Mailing Address **7888 Anthony Highway, Waynesboro, PA 17268**
Phone(s) **(717)496-6431**   Fax _____ Email **ryan.covalt@freengineservice.com**

BUYER _Whitney Covalt_     DATE _7/7/19_
     Whitney L. Covalt
Mailing Address **7888 Anthony Highway, Waynesboro, PA 17268**
Phone(s) _____ Fax _____ Email _____

BUYER _____ DATE _____
Mailing Address _____
Phone(s) _____ Fax _____ Email _____
AUTHORIZED REPRESENTATIVE _____
Title _____
COMPANY _____

Seller has received the Consumer Notice, where applicable, as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

**VOLUNTARY TRANSFER OF CORPORATE ASSETS (if applicable):** The undersigned acknowledges that he/she is authorized by the Board of Directors to sign this Agreement on behalf of the Seller corporation and that this sale does not constitute a sale, lease, or exchange of all or substantially all the property and assets of the corporation, such as would require the authorization or consent of the shareholders pursuant to 15P S. §1932.

SELLER _Daniel Baer_     DATE _7/7/19_
     Daniel J. Baer
Mailing Address ~~163 South Carlisle Street, Greencastle, PA 17325~~ _14754 Ridge Rd Waynesboro PA 17268_
Phone(s) _____ Fax _____ Email _____

SELLER _____ DATE _____
Mailing Address _____
Phone(s) _____ Fax _____ Email _____

SELLER _____ DATE _____
Mailing Address _____
Phone(s) _____ Fax _____ Email _____
AUTHORIZED REPRESENTATIVE _____
Title _____
COMPANY _____

# APPRAISAL CONTINGENCY ADDENDUM TO AGREEMENT OF SALE

**ACA**

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR)

1   **PROPERTY 8782 Wayne Highway, Waynesboro, PA 17268**
2   **SELLER Daniel J. Baer**
3   **BUYER Ryan D. Covalt, Whitney L. Covalt**

4   **1.**   The Agreement of Sale is contingent upon the Property being appraised (in a manner that is acceptable to underwriter if Buyer is obtaining
5      financing) and at a value that is equal to or higher than.
6      ☐   $ _____
7      ☒   The Purchase Price

8   **2.**   Contingency Period: _____ 58 _____ days (30 if not specified) from the Execution Date of the Agreement.
9      Within the Contingency Period, Buyer may obtain an appraisal of the Property from a Pennsylvania certified appraiser. If Buyer is obtaining
10      financing. the appraisal shall be performed by a Pennsylvania certified appraiser selected by the lender to whom Buyer has made application
11      for financing. If Buyer is not obtaining financing, the appraisal shall be performed by a Pennsylvania certified appraiser selected by Buyer.
12      (A)   If the terms of Paragraph 1 are satisfied, or if the appraisal is not completed within the Contingency Period, Buyer accepts the Property
13          and agrees to the terms of the RELEASE paragraph of the Agreement of Sale.
14      (B)   If the terms of Paragraph 1 are not satisfied, Buyer will deliver a copy of the appraisal report to Seller, and Buyer will, within the
15          Contingency Period:
16          1.   Terminate the Agreement of Sale by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
17             the Agreement of Sale, OR
18          2.   Enter into a mutually acceptable written agreement with Seller.

19   **3.**   If Buyer does not terminate the Agreement of Sale or enter into a mutually acceptable written agreement with Seller within this Contingency
20      Period, Buyer waives this contingency.

21   All other terms and conditions of the Agreement of Sale remain unchanged and in full force and effect.

22   **BUYER** _~~Ryan Covalt~~_     **DATE** 7/7/19
23   **BUYER** _~~Whitney Covalt~~_     **DATE** 7/7/19
24   **BUYER** _____     **DATE** _____
25   **SELLER** _~~Daniel Baer~~_     **DATE** 7/7/19
26   **SELLER** _____     **DATE** _____
27   **SELLER** _____     **DATE** _____



Pennsylvania Association of Realtors®

COPY RIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2015

RE/MAX Associates Realty Group, 400 North Grant Street Waynesboro PA 17268     Phone (717) 762-8100    Fax (717) 762-1333    Wayne Hwy, 8782
Derwyn Benedict     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com